# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

### SAN ANTONIO DIVISION

| | |
|---|---|
| TROY LINDBERG, RUBEN ESPINOZA, LUIS A. LOZANO, CLAUDIA ACOSTA, BARRIE BERGANS, DWAYNE BOLDEN, DAVID CORVIN, BOBBY GARZA, DAVID GABRIEL HARDIN, JOSE JOVEL, KEVIN LEWIS SR., SHARIQ MOHAMMAD, TARIG OWENS, OMER QURESHI, DIEGO SANCHEZ DE JARMY, JOSHUA THOMPSON, BRAD BOOTH, YUMEKA GIBSON, KEVIN GUEST, EBONY IJEH, BRANDON JORDAN, JEFFERY LAFAYETTE, KHANG NGUYEN, TENEIKA LATASHA TILLIS, APRIL WILSON, ARKEISKA JEFFERSON, COREY KINCAID, LEE NICHOLSON, STEPHANIE YELL, TAMAR ROCKMORE, WHITNEY BURTON, MICHELLE DONAHUE | CIVIL ACTION NO. |
| **Plaintiffs,** | **COMPLAINT FOR DAMAGES** |
| | 1.  **VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (Tex. Bus. & Com. Code §§ 17.41 *et seq.*)** |
| **VS.** | 2.  **FRAUD** |
| | 3.  **NEGLIGENT MISREPRESENTATION** |
| **ADTALEM GLOBAL EDUCATION, INC. formerly known as DEVRY EDUCATION GROUP, INC. and DEVRY UNIVERSITY, INC.** | 4.  **RESTITUTION FOR UNJUST ENRICHMENT** |
| **Defendants.** | **DEMAND FOR JURY TRIAL** |

Plaintiffs complain and allege as follows:

## **INTRODUCTION**

1.     This lawsuit seeks damages from Defendants for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), fraud, negligent misrepresentations, and restitution for unjust enrichment against Defendants ADTALEM GLOBAL EDUCATION, INC.

and DEVRY UNIVERSITY INC. Defendants misrepresented the benefits of graduating from DeVry University, Inc. Defendants falsely and misleadingly advertised the employment rate and income rate of their graduates to induce potential students to purchase educational products and services, and to remain students through graduation. Plaintiffs relied on these misrepresentations in choosing to purchase educational products and services from DeVry University, Inc.

2.      Advertisements for DeVry University, Inc. stated, with slight variations, that "90% of DeVry University graduates actively seeking employment obtained careers in their field within six months of graduation…."  This was actually termed "the standard 90% ad" by counsel for Defendants, Alan N. Salpeter, at a hearing held May 2, 2016 on Defendants motion to dismiss in *Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal. Consequently, the various versions of the employment rate representations will be referred to throughout this Complaint as "the Standard 90% Ad" or "the 90% Representation." As explained below, these representation are false and unsubstantiated.

3.      In addition, advertisements for DeVry University, Inc. conveyed the message that graduates obtain jobs that pay more than jobs obtained by graduates of other colleges and universities. For instance, Defendants represented that, one year after graduation, DeVry University, Inc. graduates with bachelor's degrees earned 15% more than graduates with bachelor's degrees from all other colleges and universities. This was termed "Defendants' 'higher income claim'" in *Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal.  The various versions of the higher income claim will be referred to throughout this Complaint as "the Higher Income Ad" or "the Higher Earnings Representation." As explained below, these representations are false and unsubstantiated.

4.      Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## JURISDICTION AND VENUE

**5.**     This Court has jurisdiction over this action under 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

**6.**     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. §1391(d) because Defendants have sufficient contacts with this district to be subject to personal jurisdiction.

## PARTIES

**7.**     Plaintiff Troy Lindberg was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a bachelor's degree in Technical Management and in 2016 with a master's degree in Business Administration from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the San Antonio campus. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website and on television ads.  The Standard 90% representation was repeated in person by a DeVry recruiter during the enrollment process at the San Antonio campus, from a career advisor while a student at DeVry, and during the Career Development class while a student at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2)

3

Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

8.      Plaintiff Ruben Espinoza was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2013 with an associate's degree in Applied Science in Network Systems Administration. Plaintiff attended classes at the San Antonio campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 online and heard the ads on the radio. The Standard 90% representation was repeated in person by a DeVry recruiter, and in a brochure during the enrollment process at the San Antonio campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

9.      Plaintiff Luis A. Lozano was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in DeVry in 2007, paid tuition and associated costs of attending DeVry, and graduated in 2008 with a Bachelor's degree in Technical Management and in 2015 with a Master's degree in Information Systems Management from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the San Antonio campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2013 on the DeVry Website, on a television ad, and on Facebook. The Standard 90% representation was repeated in person by an academic advisor during the enrollment process at the San Antonio campus, via career advisors while a student, on posters around campus, in emails from DeVry, and during a Career Development class while a student at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

10.      Plaintiff Claudia Acosta was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Science Technical Management. Plaintiff attended

classes at the Houston and Sugar Land campuses. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on television.  The Standard 90% representation was repeated in person by a DeVry recruiter, an academic advisor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**11.**     Plaintiff Barrie Bergans was at all relevant times a resident of Houston Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 when a recruiter visited her school and distributed brochures. The Standard 90% representation was repeated in person by an admissions counselor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the

Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

12.     Plaintiff Dwayne Bolden was at all relevant times a resident of Houston Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a bachelor's degree in Business Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on DeVry brochures.  The Standard 90% representation was repeated in person by a DeVry enrollment counselor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

13.     Plaintiff David Corvin was at all relevant times a resident of Houston Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Business Administration, and in 2013 with a master's degree in Business Administration from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 online and on heard the ads on the radio. The Standard 90% representation was repeated in person by a DeVry recruiter, a DeVry counselor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

14.     Plaintiff Bobby Garza was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and

graduated in 2013 with a bachelor's degree in Business Information Systems and in 2016 with a master's degree in Business Administration from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website. The Standard 90% representation was repeated in person by a DeVry advisor during the enrollment process at the Houston campus, as a student via campus television promotions, on television ads, and during the Career Development class. Plaintiff continued to hear about the Standard 90% Ad, and also heard about Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

15.     Plaintiff David Gabriel Hardin was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2011 with an associate's degree in Web Graphic Design. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website. The Standard 90% representation was repeated in person by an advisor and

in a brochure during the enrollment process at the Houston campus and on posters and during the Career Development class as a student at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    16.    Plaintiff Jose Jovel was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Technical Management. Plaintiff attended classes in the Sugarland and Houston campuses. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 through a DeVry recruiter that visited his high school. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Sugarland Campus, by DeVry academic and career advisors, on posters around campus, and during classes, specifically the Career Development class, while a student at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff

actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

17.    Plaintiff Kevin Lewis Sr. was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2005, paid tuition and associated costs of attending DeVry, and graduated in 2007 with an associate's degree in Electronics and Computer Technology and in 2012 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston campus. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 in an email from DeVry and during phone calls from DeVry representatives. The Standard 90% representation was repeated in person by a DeVry counselor and in a brochure during the enrollment process at the Houston campus and by career advisors and professors during the Career Development class while a student at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2)

Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

18.     Plaintiff Shariq Mohammad was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2010 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston campus .Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website.   The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus and while a student via the Career Development class and on DeVry television ads. Plaintiff continued to see the Standard 90% Ad while a student at DeVry. Plaintiff relied on the Standard 90% Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

19.     Plaintiff Tarig Owens was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and

graduated in 2012 with a bachelor's degree in Electrical Engineering. Plaintiff attended classes at the Houston campus. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 online and was also exposed to television and radio DeVry ads while enrolled at DeVry. The Standard 90% representation was repeated in person by an academic advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad while a student at DeVry. Plaintiff relied on the Standard 90% Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **20.**    Plaintiff Omer Qureshi was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a bachelor's degree in Accounting. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 on television.  The Standard 90% representation was repeated in person by a DeVry advisors and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the

Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

21.     Plaintiff Diego Sanchez De Jarmy was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston Campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 on the DeVry website and in DeVry television commercials. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded

graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

22.    Plaintiff Joshua Thompson was at all relevant times a resident of Katy, Texas. Plaintiff enrolled in DeVry in 2014, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston and Sugar Land campuses. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2013 on a television ad and via an admissions advisor while at the Sugar Land campus. The Standard 90% representation was repeated in person by an admissions advisor during the enrollment process at the Sugar Land campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

23.    Plaintiff Brad Booth was at all relevant times a resident of Irving Texas. Plaintiff enrolled in DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated in

2014 with a Master's degree in Information Systems Management. Plaintiff attended classes at the Irving campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2012 on television commercials. The Standard 90% representation was repeated in person by a DeVry counselor and in a brochure during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry.  Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**24.**     Plaintiff Yumeka Gibson was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2010 with an associate's degree in Applied Science in Health Information Technology. Plaintiff attended classes at the Irving campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 online. The Standard 90% representation was repeated in person by a recruiter and in a brochure during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad,

while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

25.     Plaintiff Kevin Guest was at all relevant times a resident of Irving, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a master's degree in Accounting and Financial Management. Plaintiff attended classes at the Irving, Fort Worth, and Richardson campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on television commercials and on YouTube.  The Standard 90% representation was repeated in person by a DeVry recruiter and in a brochure and a Power Point presentation during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not

17

employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

26.     Plaintiff Ebony Ijeh was at all relevant times a resident of Mesquite, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a bachelor's degree in Health Care Administration. Plaintiff attended classes at the Irving campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on television commercials. The Standard 90% representation was repeated over the phone by a DeVry recruiter and in a brochure during the enrollment process online in 2010. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

27.     Plaintiff Brandon Jordan was at all relevant times a resident of Garland, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and

graduated in 2013 with a bachelor's degree in Business Administration. Plaintiff attended classes at the Irving campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on the DeVry website. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

28.    Plaintiff Jeffery Lafayette was at all relevant times a resident of Longview and Frisco, Texas. Plaintiff enrolled in DeVry in 2006, paid tuition and associated costs of attending DeVry, and graduated in 2010 with a bachelor's degree in Computer Information Systems and in 2012 with a master's degree in Information Systems Management from DeVry's Keller Graduate School of Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in the Keller Graduate School of Management. Plaintiff was initially exposed to the Standard 90% Ad in approximately 2010 on a television commercial, on the radio, during phone conversations with DeVry advisors, and on the DeVry website.  The

Standard 90% representation was repeated over the phone by an advisor during the enrollment process online. Plaintiff continued to hear about the Standard 90% Ad, and also heard about Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

29.     Plaintiff Khang Nguyen was at all relevant times a resident of Garland, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Irving and Richardson campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 on the DeVry website. The Standard 90% representation was repeated in person by an academic advisor during the enrollment process at the Richardson campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully

attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

30.     Plaintiff Teneika Latasha Tillis was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Business Administration. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 in an email from DeVry and on the DeVry website. The Standard 90% representation was repeated in person by an academic advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

31.     Plaintiff April Wilson was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated in 2014 with an associate's degree in Health Information Technology and in 2016 with

a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2012 on the DeVry website.  The Standard 90% representation was repeated in person by a DeVry advisor during the enrollment process at the Houston campus and while a student during the Career Development class and by academic advisors. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**32.**     Plaintiff Arkeiska Jefferson was at all relevant times a resident of Texarkana and Dallas, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with an associate's degree in Health Information Technology. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially heard about the Standard 90% Ad in approximately 2008 via a DeVry recruiter over the phone.  The Standard 90% representation was repeated by an advisor during the enrollment process online and over the phone. Plaintiff continued to hear about the Standard 90% Ad while a student at DeVry. Plaintiff relied on the Standard 90% Ad in choosing

to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **33.**    Plaintiff Corey Kincaid was at all relevant times a resident of Waelder, Texas. Plaintiff enrolled in DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a bachelor's degree in Networking Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2012 on the DeVry website and heard about it on the radio.  The Standard 90% representation was repeated by a DeVry recruiter over the phone during the enrollment process, via emails from DeVry representatives and on the DeVry website while a student at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

34.     Plaintiff Lee Nicholson was at all relevant times a resident of Long View, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2013 with an associate's degree in Web Design. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on the DeVry website and in a television ad. The Standard 90% representation was repeated via a phone conversation by an admissions advisor during the enrollment process. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

35.     Plaintiff Stephanie Yell was at all relevant times a resident of Brady, Slaton and Wilson, Texas. Plaintiff enrolled in DeVry in 2014, paid tuition and associated costs of attending DeVry, and graduated in 2017 with a bachelor's degree in Justice Administration. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2013 on the DeVry website.  The Standard 90% representation was repeated via a phone conversation by a recruiter during the enrollment process. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90%

24

Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

36.     Plaintiff Tamar Rockmore was at all relevant times a resident of Brookshire, Dallas, and Plano, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Business Administration, and in 2014 with master's degree in Business Administration from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the Houston and Irving campuses. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 via a DeVry recruiter that visited her high school.  The Standard 90% representation was repeated in person by a DeVry advisor during the enrollment process at the Houston campus, via DeVry academic and career advisors, on posters around campus, and during classes, specifically a Career Development class, while a student at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted

graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

37.     Plaintiff Whitney Burton was at all relevant times a resident of Redfield Arkansas, San Diego California, Irving and Grand Prarie, Texas. Plaintiff enrolled in DeVry in 2013, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a bachelor's degree in Technical Management, and in 2016 with master's degree in Human Resource Management. Plaintiff attended classes at the San Diego and Irving campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2013 via a DeVry recruiter at a job fair and on a Facebook ad online.  The Standard 90% representation was repeated in person by an advisor during the enrollment process at the San Diego Campus, in television ads, and via professors during her classes at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that

could be reasonably considered "in their field" is significantly smaller than 90%.

38.     Plaintiff Michelle Donahue was at all relevant times a resident of Redondo Beach, California and Pasadena, Houston, and Highlands, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Health Service Management, and in 2015 with a master's degree in Business Administration from DeVry's Keller Graduate School of Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 via a DeVry recruiter.   The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Sherman Oaks Campus and via academic and career advisors while a student at DeVry. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

39.     Defendant Adtalem Education Group, Inc. ("Adtalem") is a publicly traded Delaware corporation with its principle place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515.  Adtalem was formerly known as DeVry Education Group, Inc., which was formerly known as DeVry, Inc.  Adtalem transacts or has transacted business in this district and

throughout the United States.  At all times material to this Complaint, with respect to the acts and practices of DeVry University, Inc. identified below, Adtalem dominated or controlled those acts and practices, knew of or approved those acts and practices, and/or benefitted from those acts and practices. Adtalem disseminated and/or controlled dissemination of the challenged advertisements.

40.    Defendant DeVry University, Inc., including its Keller Graduate School of Management ("DeVry"), is a Delaware corporation that is a subsidiary of Adtalem, with its principle place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515.  DeVry transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, DeVry has advertised, marketed, distributed, or sold educational products and services to consumers, throughout the United States, including to Plaintiffs in the state of Texas. Adtalem and DeVry are collectively referred to as "Defendants" in this Complaint

## FACTS COMMON TO CAUSES OF ACTION

41.    To induce prospective students to purchase DeVry educational products and services, Defendants have disseminated, or caused to be disseminated, advertisements for their educational products and services in various formats, including but not limited to, television advertisements, websites, YouTube videos, brochures, radio advertisements, social media platforms and print advertisements.

42.    Since at least 2008, Defendants' advertisements have been widely disseminated throughout the United States including within the state of Texas and this federal district.

43.    Defendants have widely disseminated this and other advertisements containing the same or substantially similar statements and depictions pertaining to the "Standard 90% Ad" and

the "Higher Income Ad" to induce prospective students to purchase DeVry educational products and services.

44.     Plaintiffs were persuaded to purchase DeVry's educational products and services, took classes at Defendants' locations in Texas, and some attended Devry locations within the jurisdiction of the United States District Court for the Western District of Texas, San Antonio Division.

45.     Adtalem has at all relevant times operated DeVry, including its Keller Graduate School of Management, a private, for-profit postsecondary educational institution with campuses throughout the United States, and at times has had as many as 96 campuses. DeVry also offered online classes and degree programs.

46.     Annual new-student enrollment between 2008 and 2014 ranged from approximately 29,000 to 49,000. More than 870,000 students have reportedly enrolled at DeVry since 1975.

47.     Adtalem's total gross revenues between 2008 and mid-2015 reportedly exceeded $14.5 billion. DeVry's gross revenues between 2008 and mid-2015 exceeded $8.6 billion.

48.     In each fiscal year between and including 2011 and 2014, DeVry spent more than $135 million on advertising, marketing, or other promotion of its educational products and services.

49.     Defendants misrepresented the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of educational products and services. The advertising, marketing, or other promotion included statements such as "90% of all graduates in the active job market had careers in their fields within six months" and "90% of our **grads** actively seeking employment **had careers** in 6 months." Defendants also targeted Spanish language markets with similar statements, such as "el 90% de nuestros **graduados** que buscaron empleo de forma activa **ejercian su carrera** en 6 meses."   Although Defendants slightly varied the wording and percentages in their statements, the consistent message of the Standard 90% Ads was that a very

high percentage of Defendants' graduates obtained a good job in their field of study within six months of graduation.

50.     The 90% Representations were made through various means such as television, internet webpages, YouTube, brochures, print advertisements, emails, radio ads and in person by Defendants' employees or representatives.

51.     Defendants also represented that DeVry graduates would earn more money, as compared to the graduates of other colleges and universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

52.     Defendants' actions led to a lawsuit filed by the Federal Trade Commission to enjoin the deceptive trade practices. *See Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016 (the "FTC case").

53.     The FTC case was reported as settled in December 2016.

54.     Upon information and belief, based on the May 2, 2016 hearing transcript in the FTC case, the FTC spent two years investigating the case before filing suit against Defendants.

55.     Upon information and belief, based on the August 30, 2016 hearing transcript in the FTC case, Defendants produced more than 2 million pages of documents to the FTC.

56.     Upon information and belief, the Standard 90% Ads and the Higher Earnings Ads were false and misleading.[1] The FTC case was reported as settled in December 2016. The settlement included a permanent injunction against "[m]aking any representation, expressly or by implication, about the benefit of any educational product or service, or the success or likely success of any student or graduate, unless the representation is non-misleading, and, at the time such

---

[1] The information and belief supporting Plaintiffs' claims that the Standard 90% Ads and Higher Income Ads were false and misleading is based on the allegations contained in the complaint filed in the FTC case, the fact that the allegations were made after a two-year investigation by the FTC involving a document production by Defendants of over 2 million pages, the fact that counsel for the FTC were required to have a good faith basis for the allegations, the statements by counsel and the court in the May 2, 2016 and August 30, 2016 hearing transcripts from the FTC case, the fact that Defendants decided to settle the FTC case rather than move for summary judgment, and the terms of the settlement agreement.

representation is made, DeVry possesses and relies upon Competent and Reliable Evidence that is sufficient to substantiate that the representation is true."

57.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, in order to manufacture support for the 90% Representation, Defendants counted a substantial number of DeVry graduates who should not be counted and excluded a substantial number of graduates who should not be excluded.

58.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, in order to manufacture support for the 90% Representation, Defendants included a substantial percentage of graduates who did not obtain a job as a result of earning a degree from DeVry.

59.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, in order to manufacture support for the 90% Representation, a significant percentage of the jobs that Defendants counted as being in the graduate's field of study include jobs that would not reasonably be considered in the graduate's field of study.

60.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, in order to manufacture support for the 90% Representation, Defendants also excluded certain students from the calculation who in fact were actively seeking employment.

61.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could reasonably be considered "in their field" is significantly smaller than 90%.

62.     Upon information and belief, based on an announcement from the Attorney General of Massachusetts, the investigation leading to that lawsuit against and settlement with DeVry found that certain DeVry programs had job placement rates as low as 52%.

63.     Upon information and belief, based on the May 2, 2016 and August 30, 2016 hearing transcripts from the FTC case, the FTC had more factual information from its investigation than was included in the complaint.

64.     Upon information and belief, based on the May 2, 2016 hearing transcript, only some "examples" of the Standard 90% Ad were included in the complaint filed in the FTC case. Counsel for the FTC, Christina V. Tusan, argued at the hearing: "We're not going to include every example. We're not required to."

65.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, Defendants' did not have a reasonable basis for making the Higher Earnings Representations.

66.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, the Higher Earnings Representations were based upon a third-party "income report." The sampling methods and methodology behind the income report gave or should have given Defendants reason to question the reliability of the conclusions and information contained in the report. Among other problems, the comparison of incomes of DeVry graduates with graduates from other schools did not adjust for significant salary drivers such as age, experience, and degree field.

67.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, the statistics collected by DeVry from thousands of its graduates about their incomes differed significantly from the third-party's statistics.

68.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, comparing the information in Defendants' own files with publicly available income data will show that DeVry graduates, one year after graduating, do not in fact earn significantly more than graduates from all other schools combined.

69.     Upon information and belief, based on the August 30, 2016 hearing transcript from the FTC case, documents in DeVry's possession and produced to the FTC will provide additional support for the allegations that the Standard 90% Ads and the Higher Earnings Representations were false and misleading. As noted by the Honorable Suzanne H. Segal during the hearing, the FTC's disclosures "gave quite a bit of detail to the FTC's allegations against the Defendants and included some very specific allegations and references to documents."

70.     In the words of the FTC's counsel, Ms. Tusan, "[t]he detailed provision we gave in our initial disclosures, which went above and beyond what was required, was in response to Defendants' raising of those issues with the Court and saying they were unclear of our theory of the case, they felt like they needed more detail." However, the disclosures were placed under seal and that additional level of detail is not available to counsel for Plaintiffs at this time.

71.     Upon information and belief, based on the August 30, 2016 hearing transcript from the FTC case, the FTC as part of its investigation obtained "third-party documents" through subpoenas that support the allegations in the complaint filed in the FTC case.

72.     Defendants intended that plaintiffs rely on the 90% Representations and the Higher Earnings Representations when deciding to purchase DeVry's educational products and services, and/or to continue their studies with DeVry through graduation.

73.     Plaintiffs reasonably relied on Defendants' representations in making their decision to purchase DeVry's educational products and services, and/or to continue their studies through graduation.

74.     As a result of the reasonable reliance by each named Plaintiff herein, Plaintiffs incurred financial harm, and other damages.

75.     Plaintiffs' claims presented herein rise to the level of plausibility set forth in *Bell Atlantic Corp. v. Twombly* by asserting the who, what, where and how of the misconduct which caused Plaintiffs' damages: The "who" (Defendants); the "what" (misrepresentations regarding post-graduation employment rates and income); the "when" (between 2008 and 2016); the "where" (TV, Youtube, brochures, websites, emails, radio, in person); and the "how" (by miscounting three categories of graduates for the Standard 90% Ad and unreliable sampling and methodology for the Higher Earnings Representation). *See* Fed. Trade Comm'n v. DeVry Educ. Grp., Inc., No. CV-16-00579-MWF-SSX, 2016 WL 6821112, at *3 (C.D. Cal. May 9, 2016). *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

# FIRST CAUSE OF ACTION

## DECEPTIVE TRADE PRACTICES ACT

76.     Plaintiffs incorporate paragraphs 1 through 75 of this Complaint as though fully alleged herein.

77.     Defendants misrepresented the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of its educational products and services. The 90% Representations—that 90% of Defendants' graduates were employed in their field within six months of graduation— were made through various means such as television, internet webpages, YouTube, brochures, radio, print advertisements, and in person by Defendants' employees. The 90% Representations were false, misleading, and deceptive. Defendants' Higher Earnings Representations were also false, misleading, and deceptive. Plaintiffs reasonably relied on Defendants' representations in deciding to enroll in and/or to continue their studies at DeVry through graduation. Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, despite diligent efforts to secure post-graduation employment within their field of study.

78.     Plaintiffs are consumers as defined in the DTPA in that Plaintiffs sought or acquired educational products and services by purchase from DeVry and the purchase of these educational products and services are the basis of Plaintiffs' claims.

79.     Plaintiffs each delivered to Defendants a demand letter detailing their claims, including the amount of the claim, together with a demand for reasonable attorney's fees and expenses to the date of the letter. Therefore, all conditions precedent to Plaintiffs' recovery in this action have been performed or have occurred.

80.     Defendants have not tendered payment or presented an adequate offer of settlement in writing in response to Plaintiffs' demand letters.

81.     Defendants knowingly or intentionally engaged in false, misleading, or deceptive practices in the transactions described above, which were a producing cause of damages to

Plaintiffs. Defendants' conduct took advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity to a grossly unfair degree so as to be a producing cause of damages to Plaintiffs.

82.     As a result of Defendants' conduct, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, and attended classes in reliance on Defendants' representations. Plaintiffs have also suffered mental anguish as a result of Defendants' conduct.

83.     Defendants are required to restore to Plaintiffs any money or property that was illegally acquired in violation of the Texas Deceptive Trade Practices Act.

84.     To pursue this claim against Defendants, Plaintiffs had to retain The Carlson Law Firm, PC as attorneys and agreed to pay that law firm reasonable fees for their services in maintaining Plaintiffs' claims. Plaintiffs are entitled to recover those fees from Defendants under Section 17.50(d) of the Texas Business and Commerce Code.

## SECOND CAUSE OF ACTION
### FRAUD

85.     Plaintiffs incorporate paragraphs 1 through 84 of this Complaint as though fully alleged herein.

86.     Defendants made material representations to Plaintiffs about the employment rate of DeVry graduates. The 90% Representations—that 90% of Defendants' graduates were employed in their field of study within six months of graduation—were made through various means such as television, internet webpages, radio, YouTube, brochures, print advertisements, and in person by Defendants' employees.

87.     Defendants' representations about the employment rate of DeVry graduates were false.

88.     Defendants also represented that DeVry graduates would earn more money with statements such as "An education that pays" and "One year after graduation, DeVry University

35

grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

**89.**     The Higher Earnings Representations were also false.

**90.**     When the representations were made, Defendants either knew that they were false or made the representations recklessly without knowledge of the truth and as a positive assertion.

**91.**     Defendants made the 90% Representations and Higher Earnings representations with the intent that Plaintiffs should act on them by enrolling in DeVry and/or continuing their studies with DeVry through graduation.

**92.**     Plaintiffs acted in reliance on Defendants' representations in making their decision to enroll and/or continue their studies with Defendants through graduation.

**93.**     Plaintiffs did not obtain employment or a career in their field of study within six months of graduation.

**94.**     Plaintiffs thereby suffered damages.

**95.**     Plaintiffs are hereby entitled to restitution of the monetary benefits conferred unto Defendants, where under Texas law, one who is induced by fraud to enter into a contract may be entitled to an equitable remedy of restitution that would restore him or her to the position s/he would have been in had s/he not been the victim of fraud.

<u>**THIRD CAUSE OF ACTION**</u>
**NEGLIGENT MISREPRESENTATION**

**96.**     Plaintiffs incorporate paragraphs 1 through 95 of this Complaint as though fully alleged herein.

**97.**     In the course of their business, Defendants' supplied false information about the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of its educational products and services. Defendants supplied false information about the employment

rate of its graduates, the 90% Representations, for the guidance of others, including Plaintiffs herein.

98.    In the course of their business, Defendants also represented that DeVry graduates would earn more money than graduates of other colleges and universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates"—the Higher Earnings Representations. These representations were made for the guidance of others, including Plaintiffs herein.

99.    Although Defendants may claim to have believed that the 90% Representations and Higher Earnings Representations were true, Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

100.    Plaintiffs justifiably relied on Defendants' representations in deciding to purchase educational products and services from DeVry, and/or continue their studies with DeVry through graduation.

101.    Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, and Defendants' negligent misrepresentations proximately caused Plaintiffs' injuries and damages.

102.    Plaintiffs are entitled to a restoration of the monetary benefits conferred unto Defendants, where these monetary benefits were wrongfully secured by Defendants and it would be unconscionable for Defendants to retain them.

## FOURTH CAUSE OF ACTION
## RESTITUTION FOR UNJUST ENRICHMENT

103.    Plaintiffs incorporate paragraphs 1 through 102 of this Complaint as though fully alleged herein.

104.    Defendants obtained benefits from Plaintiffs in the form of monies paid for tuition, fees, and other costs associated with enrolling in and continuing to pursue studies at DeVry through

graduation.

**105.** Defendants misrepresented the benefits of obtaining a degree from DeVry. Defendants represented that 90% of Defendants' graduates were employed in their field of study within six months of graduation.

**106.** Defendants' representations about the employment rate of DeVry graduates were false.

**107.** Defendants also represented that DeVry graduates would earn more money with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

**108.** The Higher Earnings Representations were also false.

**109.** As such, Defendants have been unjustly enriched through wrongfully obtaining benefits from Plaintiffs by fraud and/or the taking of undue advantage of Plaintiffs.

**110.** Plaintiffs are therefore entitled to restitution and/or restoration for unjust enrichment and/or money had and received.

## DEMAND FOR JURY TRIAL

**111.** In accordance with Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully request that Defendants be cited to appear and answer, and that on final hearing, Plaintiffs have:

a. Restitution;

b. Economic damages;

c. Mental anguish damages;

d. Additional DTPA damages of three times each plaintiff's economic and mental anguish damages;

e. Attorney's fees through entry of final judgment in this action;

f. Prejudgment and postjudgment interest;

g. Costs of this suit; and

h. Any other relief that the Court finds proper.


Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**
1717 N. Interstate Highway 35, Suite 305
Round Rock, Texas 78664
Phone: (512) 671-7277
Fax:    (512) 238-0275

By:    /s/ John R. Fabry
       **JOHN R. FABRY, OF COUNSEL**
       Texas Bar No. 06768480

       JFabry@carlsonattorneys.com

       **LUIS MUNOZ**
       Texas Bar No. 24081056

       LMunoz@carlsonattorneys.com